```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

MARTHA FLORY,                      :
      Plaintiff            :
                           :
      vs.                  :     CIVIL NO. 1:CV-06-1537
                           :
                           :
PINNACLE HEALTH HOSPITAL,
      Defendant            :

*M E M O R A N D U M*

I.   *Introduction*

      Plaintiff, Martha Flory, filed this action against defendant, Pinnacle Health Hospitals, her former employer, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12117; the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951-963 (Purdon & Purdon Supp. 2008-09); and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 791.[1] Plaintiff claims that Pinnacle fired her after failing to make a reasonable accommodation for her ambulatory dysfunction, retaliated against her after she invoked her rights under the ADA, and paid her less money than those in the same job who were not disabled.

      We are considering Defendant's motion for summary judgment. We will evaluate it under the well established

---

[1] Defendant's name is spelled in the caption as Pinnacle Health Hospital, in the singular.

standard. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).[2]

II.  *Background*

Based on the parties' statements of material fact and supporting evidence, the following is the undisputed background to this litigation.[3] Flory is a registered nurse who worked for Polyclinic Health System before it merged with Harrisburg Hospital in 1995 to become Pinnacle Health Hospitals. Plaintiff suffered a back injury in 1986 which required spinal fusions in 1990 and 1998. As a result of the second operation, Plaintiff has ambulatory dysfunction.[4] In 1998, she was placed on a four-hour workday, a requirement imposed by worker's compensation physicians.

In 1997, Flory became a registered nurse assessment coordinator (RNAC). As an RNAC, Flory coordinated insurance

---

[2] The ADA and the RA apply the same standard to determine liability. *Antol v. Perry*, 82 F.3d 1291, 1299 (3d Cir. 1996). In regard to the PHRA claim, the PHRA and the ADA are "basically the same . . . in relevant respects and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (alteration in original)(quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). Hence, as Defendant argues, we can rely on ADA cases to resolve the claims under all three laws.

[3] We will sometimes borrow the parties' language without attribution.

[4] She also suffers from diabetes, sleep apnea, reflux disease, asthma, muscle spasms, shortness of breath, hypoglycemic disease and fainting.

2

activities and gathered information on extended-care patients. Flory also had to interact with patients.

Because of her ambulatory dysfunction, it was unsafe for Plaintiff to walk on slippery surfaces. These could be surfaces that were merely wet from rain as well as those that were snow covered. Plaintiff decided whether she would go to work "by checking the weather forecast and looking outside." (Doc. 28-3, Flory Decl. ¶ 13). "When there was precipitation, or precipitation was forecasted, during [the] work day, [she] did not go to work." (*Id.* ¶ 14.) In February 2000, Plaintiff's then supervisor, Leann Roch, noticed a pattern where Plaintiff was calling off work due to weather. Plaintiff presented a doctor's excuse. Roch did not discipline Plaintiff for the absences because Roch left the Hospital's employ before that could happen. (Doc. 26-3, Roch Dep. pp. 9-10). In late 2003 or early 2004, Nancy Fridy was hired as the nursing home administrator. Fridy did not charge Plaintiff with absences when she was not at work because of inclement weather. (Doc. 28-3, Flory Decl. ¶¶ 21-22).[5]

In February 2005, Plaintiff submitted a doctor's note requesting that she be excused from work during inclement weather. The note prompted a discussion between Flory; Stacy Lowther, the nursing home administrator; Cathleen Timothy, nurse

---

[5] In this case, "inclement weather" means precipitation, either rain or snow.

manager, and Glenda Galey, personnel representative for Pinnacle. The parties discussed ways Flory could get to the Hospital during inclement weather: clearing herسidewalk so that she could get to her car and calling a taxi or van to drive Plaintiff from home to work. Defendant also believes the parties discussed providing her with a wheelchair so that she could get from her car to the Hospital door and providing her with a bus pass.

None of these solutions was acceptable to Flory. Her main concern was getting from her house to her car, which was unsafe even if the sidewalk was just wet from rain (and remained wet after a snowfall, even when the snowfall was cleared).

Another solution was coming in on the weekends. However, Flory's office was on the third floor; the elevator did not operate on the weekends, and she did not know if she "could have managed the steps," meaning the stairwell. (Doc. 26, Flory Dep. pp. 61; doc. 28-3, Flory Decl. ¶ 45).

Pinnacle has a progressive disciplinary policy. An employee is first given a verbal warning, then a written warning, then a suspension, and finally termination. Insubordination may result in immediate termination.

Between February 21, 2005, and March 1, 2005, Flory called off work five times, four because of weather. On February 23, 2005, Flory received an oral warning for allowing patients' medical records to collect in the RNAC office rather than

forwarding them to medical records. On March 2, 2005, Plaintiff was given a written warning based on the absenteeism. The warning instructed her that when snow was forecasted, she should arrange with her supervisor to work alternate hours or on the weekend. On March 9, 2005, Flory was given a one-day suspension for not coming to work because of the weather.

On April 11, 2005, Flory's employment was terminated. According to the documentation for the termination, she had performed deficiently on March 9, 2005, March 22, 2005, and April 1, 2005. During the last incident, the description of Plaintiff's behavior indicated a refusal to do work within the RNAC job description and a rude attitude toward her superior. It was also noted that she had called in ill from April 4 to April 8, 2005. Her employment was terminated on the basis that she "had failed to meet specific performance criteria of the RNAC position." Quoted in the dismissal document was the portion of the RNAC job description requiring that an RNAC "must maintain a professional attitude and demeanor and communicate effectively and easily with all members of the extended care family." (Doc. 26-4, ECF pages 14-15, conference record of April 11, 2005).

Flory filed a complaint with the Pennsylvania Human Relations Commission (PHRC), alleging failure to provide her with reasonable accommodations and also complaining about her discharge. The certificate of service indicates it was mailed to Defendant on May 27, 2005. Plaintiff had filed four previous

PHRC complaints about Pinnacle dating from February 26, 2001, through December 12, 2002. (Doc. 26-2, Flory Dep., pp. 68-76).

With respect to Plaintiff's disparate pay claim, one of her RNAC colleagues was paid an hourly rate of $25.50, higher than Plaintiff's. This had been the coworker's wage rate in her previous job with Pinnacle, and she retained that rate when she became an RNAC in September 2003. Additionally, when another coworker who had just started as an RNAC came to Flory about a problem with her paycheck, Flory saw that the other coworker was also being paid more than she. Flory believed this was Pinnacle's attempt to make her quit. (Doc. 26, Flory Dep. pp. 66-67).

III. *Discussion*

    A. *Discharge Claim*

"In order to make out a prima facie case of disability discrimination under the ADA, [Plaintiff] must establish that she (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006). Here, Pinnacle does not contest that Plaintiff has a disability but does argue that she has failed to establish that she is a "qualified individual."

"A 'qualified individual' is defined as one 'who, with or without reasonable accommodation, can perform the essential

6

functions of the employment position that such individual holds or desires.'" *Id.* (quoting 42 U.S.C. § 12111(8)). "The EEOC regulations divide this inquiry into two parts: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." *Id.* (citing 29 C.F.R. § 1630.2(n)). On the second part of the inquiry, "[w]hether a job duty is an 'essential function' turns on whether it is 'fundamental' to the employment position," *id.* at 612. (citing 29 C.F.R. § 1630.2(n)(1)), and it is a factual determination made on a case by case basis. *Id.*[6]

Defendant asserts that Flory is not qualified because she cannot "regularly attend work as scheduled." (Doc. 23, Def.'s Br. in Supp. p. 10). Pinnacle cites in support *Smith v. Davis*, 248 F.3d 249, 251 (3d Cir. 2001), where the Third Circuit, citing *Tyndall v. Nat'l Educ. Centers,* 31 F.3d 209, 213 (4th Cir. 1994), stated that "[a] employee who does not come to work on a regular basis is not 'qualified.'" Pinnacle also relies on the following cases where the courts recognized that

---

[6] Citing 29 C.F.R. § 1630.2(n)(2) and (n)(3), the Third Circuit mentions certain factors and evidence to be considered in determining what is an essential function of a job. In part, those are: (1) the reason the position exists is to perform that function; (2) the limited number of employees available to perform that function; (3) the function may be so highly specialized the plaintiff had been hired to perform that function; (4) the amount of time spent on the job performing the function; and (5) the consequences of not requiring the plaintiff to perform the function.

7

an employee's absences from work would render her unqualified for the position because regular attendance is an essential function of most jobs: *Tyndall*, *supra*, 31 F.3d at 213; *Santiago v. Temple University*, 739 F. Supp. 974, 979-80 (E.D. Pa. 1990); *Johnson v. Children's Hospital*, 1995 WL 338497, at *2 (E.D. Pa.); and *Payne v. Fairfax County*, NO. 05-1446, 2006 WL 3196545, at *8 (E.D. Va. Nov. 1, 2006).

    In opposition, Plaintiff asserts that there was a reasonable accommodation that would have made her qualified for the job. First, Pinnacle could have allowed "absences on inclement weather days," (doc. 28, Pl.'s Opp'n Br. p. 5), meaning days when it had rained or snowed, or there was a prediction of precipitation. In this regard, she points out that two of her previous supervisors had allowed her to be absent on such days. She also argues that Defendant has not specified the level of attendance needed for the RNAC position or that Plaintiff failed to meet that minimum level.

    Looking at the second argument, as we read the cases, there is no categorical rule that makes an employee unqualified if she does not meet whatever attendance standard her employer establishes. Nonetheless, as the cases recognize, some level of regular attendance is necessary. In this regard, it is not Pinnacle's burden to establish that Plaintiff is not qualified. Rather, it is Plaintiff's burden in her prima facie case to establish that she is. *Turner*, *supra*. Her failure to establish

that she could perform the essential function of regularly coming to work means that she has not satisfied her burden on an essential element of her prima facie case - that she is qualified for the job. In other words, it is not enough for her to assert that Pinnacle simply could have allowed her to be absent on inclement weather days.

In reaching this conclusion, we reject Plaintiff's argument that she is qualified because two of her supervisors allowed her to be absent on such days. The one supervisor thought Plaintiff's absences were wrong but left Pinnacle's employ before she could pursue it further. The other may have tolerated her absences, but this quasi-estoppel argument does not assist Plaintiff. Defendant did not have to allow her to continue in the job when she was unqualified. *See Meyers v. Conshohocken Catholic School*, No. 03-4693, 2004 WL 3037945, at *9 (E.D. Pa. Dec. 30, 2004).

Finally, we reject Plaintiff's argument that Pinnacle could have accommodated her by putting her under the Family and Medical Leave Act, 29 U.S.C. § 2601-2654, because she has not established that she qualifies under the act.[7]

---

[7] Plaintiff argues that Pinnacle did not address her claim as it relates to the disciplinary charges. However, her failure to show that she was qualified is equally fatal to any independent claim based on the progressive discipline imposed on her.

    B.   *Retaliation Claim*

"[I]n order to establish a *prima facie* case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show: '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'"
*Williams v. Philadelphia Housing Auth. Police Dept.*, 380 F.3d 751, 759 (3d Cir. 2004)(quoted cases omitted).

Plaintiff bases her retaliation claim on the following. First, for the element of protected activity, she filed four administrative complaints against Pinnacle before her discharge. Second, for adverse employment actions, she suffered the withdrawal of the accommodation the two supervisors had allowed her, the imposition of progressive discipline, and her discharge.

This claim fails because there is insufficient causation between the administrative complaints and the alleged adverse actions. The four PHRC complaints Plaintiff had filed dated from February 26, 2001, through December 12, 2002, about two years and two months before the adverse actions began, with the first disciplinary action of February 23, 2005. This temporal link is too tenuous to establish causation. *See LeBoon v. Lancaster Jewish Comty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d

10

Cir. 2007)(temporal proximity standing alone may prove causation when its connection to the adverse action is "unusually suggestive"), *cert. denied*, 128 S.Ct. 2053 (U.S. April 21, 2008)(No. 07-943). We also note that Plaintiff admits that Pinnacle received the fifth administrative complaint on May 27, 2005, after her termination, so this complaint could not have been the basis of any retaliation.

    C.  *The ADA Equal-pay Claim*

Plaintiff claims that the higher rates of pay her RNAC coworkers received violated the ADA. We agree with Defendant that this claim fails because Plaintiff has not met her burden of establishing that she was qualified for the job.

We will issue an appropriate order.

                          /s/William W. Caldwell
                          William W. Caldwell
                          United States District Judge

Date: July 15, 2008

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


MARTHA FLORY,                     :

        Plaintiff                 :
                                  :
        vs.                              CIVIL NO. 1:CV-06-1537
                                  :
                                  :
PINNACLE HEALTH HOSPITAL,
        Defendant                 :
```

*O R D E R*

AND NOW, this 15th day of July, 2008, it is ordered that:

    1. Defendant, Pinnacle Health Hospitals, motion (doc. 22) for summary judgment is granted.

    2. The Clerk of Court shall enter summary judgment in favor of Defendant and against Plaintiff and close this file.

                                          /s/William W. Caldwell
                                          William W. Caldwell
                                          United States District Judge